IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Case No._____


David Clay;
Matthew Deherrera;
Lamont Morgan;
William LaFontaine; and
Cynthia Shaw-Pierce, on behalf of themselves and all others similarly situated,

     Plaintiffs,

v.

Joe Pelle, in his official capacity as Boulder County Sheriff, and
Larry R. Hank, in his official capacity as administrator of the Boulder County Jail and Division
Chief of the Boulder County Sheriff Office,

     Defendants.

---

## CLASS ACTION COMPLAINT
## FOR INJUNCTIVE AND DECLARATORY RELIEF

---

## <u>INTRODUCTION</u>

    1.   In this action, plaintiffs challenge a new policy of the Boulder County Jail—

imposed earlier this year—that forbids prisoners to write letters to their parents, children,

spouses, domestic partners, fiancées, sweethearts, friends, or to anyone else in the free world

who does not fall within the jail's narrow exception to the newly-imposed ban on outgoing

letters.   Under the challenged policy, prisoners' outgoing correspondence is restricted to

postcards supplied by the jail.  This new policy severely restricts prisoners' ability to

communicate with persons outside the jail, in violation of their rights under the First and

Fourteenth Amendments to the United States Constitution and Article II, Sections 10 and 25 of the Colorado Constitution.

2.   On behalf of a class of similarly-situated prisoners of the Boulder County Jail, the plaintiffs ask this Court to enjoin the postcard-only policy and declare that it violates their constitutional rights as well as the rights of their free-world correspondents.

**JURISDICTION AND VENUE**

3.   This action arises under the Constitution and laws of the United States, including the First and Fourteenth Amendments and 42 U.S.C. § 1983.  This Court has jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343.  This Court has supplemental jurisdiction over the claims based on Colorado law pursuant to 28 U.S.C. § 1367.

4.   This Court has jurisdiction to issue the declaratory relief requested pursuant to the Declaratory Relief Act, 28 U.S.C. §§ 2201, 2202.

5.   Venue is proper in the District of Colorado pursuant to 28 U.S.C. § 1391(b).  All parties reside within the District of Colorado, and the events described in this Complaint occurred in the District of Colorado.

**PARTIES**

6.   Plaintiff David Clay is a prisoner in the Boulder County Jail.

7.   Plaintiff Matthew Deherrera is a prisoner in the Boulder County Jail.

8.   Plaintiff Lamont Morgan is a prisoner in the Boulder County Jail.

9.   Plaintiff William LaFontaine is a prisoner in the Boulder County Jail.

10. Plaintiff Cynthia Shaw-Pierce is a prisoner in the Boulder County Jail.

11. Defendant Joe Pelle is the Sheriff of Boulder County and head of the Boulder County Sheriff Office.   He exercises overall responsibility for the policies and practices of the

Boulder County Jail, including the policy challenged in this case.  He is sued in his official capacity.

12. Defendant Larry R. Hank is an employee of the Boulder County Sheriff Office, holding the rank of Division Chief.  He is the administrator and chief policymaker for the Boulder County Jail and is responsible for the formulation and operation of the policy challenged in this case.  He is sued in his official capacity.

13. Deputies and their supervisors working in the Boulder County Jail are agents and employees of defendants Pelle and Hank.

14. All actions of defendants and their agents and employees at issue here are carried out under color of state law.

## FACTS

15. The Boulder County Jail is located in Boulder, Colorado.  It houses both convicted prisoners and pretrial detainees.  Its average daily population is approximately 400.

16. Until March, 2010, prisoners in the Boulder County Jail were able to write five letters each week, with paper, envelope, and postage supplied by the jail.  Each letter could contain three sheets of 8.5 x 11 inch paper written on both sides.  Prisoners could seal the envelopes and deliver them to deputies for processing and mailing.  The jail's policy provided that deputies might read outgoing mail only if they had facts amounting to reasonable suspicion that a prisoner was using the mail illegally or for a purpose that threatened the safety and security of the jail, a public official, or any person.

17. Beginning in March, 2010, defendants suddenly announced that prisoners' outgoing correspondence would henceforth be restricted to postcards supplied by the jail.  Under the new policy, prisoners are allowed to send five postcards per week at jail expense.  Prisoners can

write letters that will be enclosed and mailed out in envelopes only when sending mail that fits into narrow categories that the jail defines as "legal mail" or "official mail."

18. The challenged policy significantly limits the ability of prisoners to express themselves, allowing prisoners less then one-twelfth the amount of writing space permitted under the former policy. In addition, the postcards expose the content of the prisoners' communications to anyone who handles or processes the postcards, both within the jail and after the postcards leave the facility. The policy either chills prisoners from writing about sensitive personal matters entirely, or it requires them to expose their communications to a host of strangers or unintended recipients—such as postal employees, an office secretary, or a child who retrieves from the mailbox a postcard that discusses sensitive details intended only for the parent's eyes. The new policy also categorically prohibits prisoners from enclosing expressive or artistic drawings they have made, newspaper or magazine clippings, religious literature, or other writings they wish to share. Prisoners cannot use an envelope to write a letter-to-the-editor, to seek spiritual guidance from clergy, to provide information to investigative reporters, or even to submit their own writings to such periodicals as the *Denver Voice* or *Prison Legal News*.

19. The postcard-only policy also burdens the First Amendment rights of non-prisoners. As the United States Supreme Court has recognized:

> Communication by letter is not accomplished by the act of writing words on paper. Rather, it is effected only when the letter is read by the addressee. Both parties to the correspondence have an interest in securing that result, and censorship of the communication between them necessarily impinges on the interest of each. … The wife of a prison inmate who is not permitted to read all that her husband wanted to say to her has suffered an abridgment of her interest in communicating with him as plain as that which results from censorship of her letter to him. In either event, censorship of prisoner mail works a consequential restriction on the First and Fourteenth Amendments rights of those who are not prisoners.

*Procunier v. Martinez*, 416 U.S. 396, 408-409 (1974).

## **Plaintiff William LaFontaine**

20. Mr. LaFontaine has been an artist his entire life.  Art is his passion and his form of expression.

21. Mr. LaFontaine spent some time at the Boulder County Jail before the challenged policy was put into effect.  During that time, Mr. LaFontaine was able to share his drawings with persons outside the jail by mailing them out in an envelope.   He was able to send his drawings to a website that posted his drawings.   He was also able to enclose drawings in his letters and send them to family, friends, and others who followed his art.

22. Pursuant to the challenged policy, however, Mr. LaFontaine cannot mail out his drawings to those who wish to receive them.

23. The challenged policy has also inhibited, chilled, and interfered with Mr. LaFontaine's communications with his wife and his mother.  He has used the jail's postcards to communicate, but he leaves out details because of the limited space and because of the lack of privacy.  He wants to communicate intimate things to his wife, but he does not want to write those intimate details on a postcard for deputies and all the world to see.  Because of the postcard-only policy, he finds himself censoring what he writes to his wife and his mother.

## **Plaintiff David Clay**

24.  The challenged policy has forced Mr. Clay to choose either to abandon important correspondence or divulge highly confidential information.  For example, he needed to write to the optical service that had the prescription for his eyeglasses.  He believed he was required to supply his Social Security number and his date of birth.  Because of the policy challenged in this case, Mr. Clay put that confidential information on a postcard for all to see.

25.  Mr. Clay has a serious medical condition, and the fact that he suffers from this condition is sensitive private information.  He wants to mention or discuss this information in sealed correspondence, not in postcards that can be read by anyone who sees them.  For example, he wants to write to his former doctor about his medical condition.  He wants to write to several organizations that may be able to help him with counseling and services both during his incarceration and after his release.  He would also like to discuss his medical issues, and getting assistance with them, in correspondence with the director of an agency who helped him before he entered the Boulder County Jail.  The challenged policy prevents him from sending such correspondence regarding his sensitive medical issues, and categorically prohibits him from sending medical records, news articles he reads about his medical condition, or any other documents.

26. Mr. Clay has written a piece that he wants to submit for publication to the *Denver Voice*, a publication concerned with the interests of homeless persons.   His proposed submission will not fit onto a postcard.  The jail's postcard-only policy prevents Mr. Clay from sending his submission to the *Denver Voice*.

### Plaintiff Matthew Deherrera

27. Mr. Deherrera spent some time in the Boulder County Jail before the challenged policy was put into effect.  During that time, Mr. Deherrera wrote letters almost every day, and they were often two to three pages long.  The challenged policy, however, has severely inhibited, chilled, and curtailed Mr. Deherrera's correspondence.

28.  Mr. Deherrera has a serious health condition of a private and sensitive nature.  Before the challenged policy went into effect, Mr. Deherrera was able to discuss this medical

issue in correspondence with his parents and in correspondence with a very close personal friend.  Now he cannot.

29.  Mr. Deherrera has several nieces and nephews who spend a large amount of time at his parents' house.  It is not unusual for one of his nieces or nephews to retrieve the mail from the family mailbox located approximately 15 feet from the house.  His nieces and nephews do not know about his sensitive medical issues.  Mr. Deherrera does not want to risk one of his nieces or nephews reading a postcard intended solely for his mother and father, and thus he has been unable to discuss these private medical issues in his correspondence with his parents.

30.  Mr. Deherrera also has a close personal friend with whom he has discussed his sensitive medical issues.  The challenged policy prevents Mr. Deherrera from discussing such personal issues on a postcard, however, because his friend's mother is living at the same address.  She does not know about Mr. Deherrera's medical issues, and he does not want her to know.  There are times when she retrieves the mail for herself and her son, so there is a very real risk that she would see the communications that he intends solely for his friend but that the challenged policy requires be exposed to whoever sees the postcard.

31.  Mr. Deherrera also wants to write to his doctor about medical and mental health issues, but he does not want to discuss those sensitive subjects on a postcard.

### Plaintiff Lamont Morgan

32.  Lamont Morgan is extremely close to his family.  He writes every day that he can. The challenged policy has inhibited, chilled, and limited the communications between Mr. Morgan and his wife, children, sister, mother-in-law and father-in-law.

33.  Mr. Morgan's wife and three of his children live together.   Mr. Morgan would like to write to his wife about relationship and parenting issues.  However, because his children

often retrieve the mail from the mailbox, Mr. Morgan is worried that they will read a postcard meant only for his wife. Recently, Mr. Morgan wanted to communicate to his wife something he learned about the boyfriend of his oldest daughter. He could not do so in a postcard, however, because he did not want his younger children to see the communication.

34. The lack of space on the jail's postcards curtails Mr. Morgan's communications. He cannot write all that he wishes to say. He has to break up his correspondence into installments. Moreover, Mr. Morgan must now rotate through a list of family members to whom he wishes to write. The jail's former policy would have allowed him to enclose several pages in a single envelope, each for the attention of a different family member.

35. Mr. Morgan enjoys drawing, as do many other inmates at the Boulder County Jail. He would like to send his artwork to his family, but the challenged policy prohibits him from using an envelope, so he cannot enclose any drawings. Mr. Morgan will sometimes draw on the postcard, but the drawing severely limits the already-meager space that is available for writing.

### Plaintiff Cynthia Shaw-Pierce

36. It is important to Ms. Shaw-Pierce to maintain her close personal relationships while she is housed in the Boulder County Jail. The challenged policy has interfered with her ability to do so, however, by inhibiting, chilling, and limiting her written communications, particularly with a close personal friend and with her common-law husband of fifteen years.

37. Ms. Shaw-Pierce lives in a very small town in rural Colorado. The residents have to use post office boxes to receive mail. There are only two postal workers in the town, and both know Ms. Shaw-Pierce by name, and she knows them. Ms. Shaw-Pierce is afraid that what she writes on the jail's postcards will be read by the postal workers and will soon become

known to the entire town.  Thus, when she uses the jail's postcards to write to her common-law husband, she self-censors her communication to ensure that she writes nothing about their personal life.  She reviews the postcard to make sure that she has not said anything too revealing or too emotional.  Because of the postcard-only policy, she declines to write about any of her feelings toward her husband or her feelings about being incarcerated.  She is forced to eliminate everything personal from her communications with her husband.  If she could write letters instead, she would be more far more open, revealing and communicative.

38. The space restrictions of the postcards severely curtail Ms. Shaw-Pierce's ability to express herself fully.  She often writes out full letters first and then must choose what she must omit so that the written communication can fit into the limited space available on the jail's postcards.

39. Ms. Shaw-Pierce has a close friend who is battling cancer.  The friend was recently scheduled to undergo cancer-related surgery.  Ms. Shaw-Pierce wanted to write her friend a heartfelt letter to offer comfort and strength as the date of the surgery approached.  Because Ms. Shaw-Pierce can fit only about three paragraphs onto one of the jail's postcards, she was forced to condense what she could say to her friend during this challenging time.  The space restrictions of the postcard restricted Ms. Shaw-Pierce's ability to communicate fully the support she wished to provide to her close friend.

### The challenged policy's effect on the Plaintiff class

40. In numerous ways, the challenged policy has inhibited, infringed, limited, chilled, and suppressed the constitutionally-protected communications between prisoners and their correspondents or intended correspondents.

41.  The challenged policy has forced prisoners to either abandon important correspondence or risk divulging highly confidential, sensitive information.  Gay prisoners have been chilled from expressing themselves when writing to their intimate partners.  Prisoners with HIV or Hepatitis C have been chilled from corresponding with medical personnel or with family members or intimate associates about their medical conditions.   Prisoners who express themselves through drawings or cartoons are forbidden to enclose their art.  Those who wish to enclose a religious tract, or a clipping from a newspaper or magazine, are forbidden from doing so.  When children may have access to the mailbox, parents are chilled from communicating with their spouses about marital problems, child-raising issues, and other matters they do not wish to disclose to their children.  Prisoners have been chilled from corresponding candidly with imams, priests, and other religious or spiritual guides.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

42. Each of the individual plaintiffs has exhausted all available administrative remedies. In addition, in response to grievances filed by prisoners, including the plaintiffs, defendants have responded that the challenged policy is "non-grieveable."  See Attachment A.  The jail's grievance procedure is therefore not an available administrative remedy for the plaintiffs' objections to the challenged postcard-only policy.

## DECLARATORY RELIEF

43. An actual and immediate controversy exists between the parties.

44. Defendants take the position that the challenged policy is valid and constitutional. Plaintiffs assert that the challenged policy violates their rights under the Colorado and United States Constitutions.

45. In requesting declaratory relief, plaintiffs request an interpretation of the rights, legal status and relationships of the parties under the law and facts.

## INJUNCTIVE RELIEF

46.    The defendants have acted and are threatening to continue acting under color of state law to deprive plaintiffs of their constitutional rights.  Plaintiffs face a real and immediate threat of irreparable injury as a result of the actions and threatened actions of the defendants and the existence, operation, and threat of enforcement of the challenged policy.

## CLASS ACTION ALLEGATIONS

47. The individual plaintiffs bring this action on behalf of themselves and all others similarly situated, pursuant to Rule 23(a) and (b)(2) of the Federal Rules of Civil Procedure.

48. The individual plaintiffs seek to represent a class defined as "all current and future prisoners in the Boulder County Jail who are subject to or affected by the defendants' postcard-only policy."

49. The proposed class is so numerous and so fluid that joinder of all members is impracticable.

50. There are questions of law and fact common to the members of the plaintiff class.

51. The claims of the named plaintiffs are typical of the claims of the members of the class.

52. The named plaintiffs will fairly and adequately protect the interests of the class. Plaintiffs have no interest that is now or may be potentially antagonistic to the interests of the class.  Plaintiffs are represented by attorneys employed by and working in cooperation with the ACLU Foundation of Colorado and the National Prison Project of the ACLU Foundation, which have extensive experience in class action cases involving federal civil rights claims.

53. Defendants have acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive and declaratory relief with respect to the class as a whole.

## FIRST CLAIM FOR RELIEF

### (First Amendment, Fourteenth Amendment, 42 U.S.C. § 1983)

54. The challenged policy has violated, and threatens to continue violating, the plaintiffs' rights under the First Amendment and the Due Process Clause of the Fourteenth Amendment.

55. Wherefore, the plaintiffs are entitled to a declaratory judgment, injunctive relief, and such additional relief as the Court deems just.

## SECOND CLAIM FOR RELIEF

### (Colorado Constitution, Article II, Sections 10 and 25)

56. The challenged policy has violated, and threatens to continue violating, the plaintiffs' rights under the Colorado Constitution, Article II, Sections 10 and 25, which protect the right of free expression and the right to due process of law.

57. Wherefore, the plaintiffs are entitled to a declaratory judgment, injunctive relief, and such additional relief as the Court deems just.

## PRAYER FOR RELIEF

58. Wherefore, plaintiffs ask that this Court:

    a.    Certify, pursuant to Fed. R. Civ. P. 23(a) and (b)(2), a class comprising "all current and future prisoners in the Boulder County Jail who are subject to or affected by the defendants' postcard-only policy;"

b.      Declare that the challenged postcard-only policy violates the rights of the

plaintiffs and their correspondents;

c.      Permanently enjoin the defendants from continuing to enforce the

challenged postcard-only policy, or any other policy that limits outgoing mail to

postcards, thus restoring the status quo that existed before this controversy began;

d.      Award plaintiffs their reasonable costs and attorney fees;

e.      Provide whatever additional relief the Court deems just.

Dated August 3, 2010

s/Mark Silverstein _____
Mark Silverstein
Legal Director
American Civil Liberties Union Foundation of Colorado
400 Corona Street
Denver, Colorado 80218
Telephone:  (303) 777-5482
Fax:  (303) 777-1773
Email: msilver2@att.net


s/David C. Fathi_____
David C. Fathi
Director
National Prison Project of the ACLU Foundation, Inc.
915 15th Street NW, 7th Floor
Washington, D.C. 20005
(202) 548-6603
Email: dfathi@npp-aclu.org
*Not admitted in DC; practice limited to federal courts*

**Attorneys for Plaintiffs**