# EXHIBIT 8

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Case No. 10-cv-01840-WYD-BNB

David Clay;
Matthew Deherrera;
Lamont Morgan;
William Fontaine; and
Cynthia Shaw-Pierce, on behalf of themselves and all others similarly situated,

      Plaintiffs,

v.

Joe Pelle, in his official capacity as Boulder County Sheriff; and
Larry R. Hank, in his official capacity as administrator of the Boulder County Jail and
Division Chief of the Boulder County Sheriff's Office,

      Defendants.

---

## DECLARATION OF PLAINTIFFS' EXPERT STEVE J. MARTIN

---

ACLU000391

## I. INTRODUCTION

    1.    I have been retained by counsel for the plaintiffs to render an opinion in this case regarding the Boulder County Jail's (BCJ) policy that restricts inmates' outgoing correspondence to postcards supplied by the jail.

## II. QUALIFICATIONS OF THE EXPERT

    2.    I am an independent consultant in the field of corrections with over 38 years experience in correctional administration.   I am also admitted to practice law in the state of Texas. My general qualifications as an expert in the field of corrections are set forth in my *Curriculum Vitae*, attached hereto as Exhibit 1.   In addition to these general qualifications, I have direct experience with the implementation and management of correspondence rules and regulations in

1

both jails and prisons.   From 1981 to 1985, I was employed by the Texas Department of

Corrections ("TDC") as Legal Counsel, and subsequently as General Counsel and Chief of Staff to

the Director.   During this time, one of my responsibilities was to assist in the development of

correspondence rules for the TDC in settlement of a class action lawsuit.   Subsequent to

settlement of the lawsuit, I was also involved in monitoring compliance with the terms and

conditions of the settlement agreement.   I was often asked to consult with the Review Committee

charged with hearing appeals for rejected or denied correspondence and publications. One of my

staff attorneys, who reported directly to my office, routinely met with the Review Committee in

order to provide legal advice on correspondence and publication issues.

       3.      I have also reviewed and/or assisted in the development of correspondence rules in

a variety of confinement systems such as the states of New York and Colorado, the U. S.

Immigration and Naturalization Service, and the Commonwealth of Puerto Rico.   Currently, I

am involved in prison and jail litigation in seventeen states and the American Virgin Islands.   I am

presently serving as a federal court monitor/court appointed expert/subject matter expert in four

class action cases in Mississippi (prison system), Florida (metropolitan jail), New York

(metropolitan jail) and Ohio (juvenile detention system).   From 1994-2008, I worked as a

corrections expert for the U. S. Department of Justice, Civil Rights Division.   I am currently under

contract as a corrections expert for the Department of Homeland Security, Office of Civil Rights

and Civil Liberties.

       4.      I am co-author of Texas Prisons: The Walls Came Tumbling Down, (Texas

Monthly Press, 1987); and contributed to Courts, Corrections, and the Constitution (Oxford

University Press, 1990) and Building Violence: How America's Rush to Incarcerate Creates More

Violence (Sage Publications, 2000).   I have published numerous articles related to correctional

ACLU000392

2

issues in law reviews and professional journals.   I am currently on the Editorial Board of the

*Correctional Law Reporter*, Civic Research Institute.   I have also served on the adjunct or visiting

faculties of six universities, including the University of Texas School of Law, and was a visiting

scholar at the Queens University School of Law, Belfast, Northern Ireland.   I have been qualified

as an expert in the field of corrections and have testified as such on more than thirty occasions,

mostly in federal courts.

## III. PUBLICATIONS AUTHORED BY THE EXPERT WITNESS

5.      A listing of publications I have authored/co-authored may be found at pages 12-13

of my *Curriculum Vitae*, attached hereto as Martin Exhibit 1.

## IV. TESTIMONY AS AN EXPERT WITNESS AT TRIAL OR DEPOSITION

6.      A listing of cases in which I have testified at trial or deposition within the preceding

four years is attached hereto as Martin Exhibit 2.

## V. COMPENSATION

7.      I am being compensated at a rate of $150 per hour for in-office work and $1,200 per

day for work performed on-site.

## VI. METHODOLOGY AND PRINCIPLES APPLIED IN FORMULATING OPINION

8.      I have received and reviewed the following case-specific materials in preparation

of this report: 1) Boulder County Sheriff's Office-Jail Division (BCSO-JD), Guidelines for the

Application of the Inmate Mail Policy, 15-01-05 (Outgoing Mail); 2) BCSO-JD, Inmate Mail,

15-01-05, January 28, 2011 and January 31, 2011; 3) Class Action Complaint for Injunctive and

Declaratory Relief including Exhibit 1 (inmate grievances); 4) Plaintiffs' Motion to Certify Class

and Appoint Class Counsel; 5) Defendants' Answer including Exhibit A (inmate mail policy);

6) Defendants' Objection to Plaintiffs' Motion to Certify Class and Appoint Class Counsel

ACLU000393

3

including Exhibit A (inmate mail policy); 7) Plaintiffs' Reply in Support of Motion for Class

Certification; 8) Defendants' Supplemental Answer including Exhibit B (inmate mail policy);

9) Boulder County Sheriff's Case Report 09-6711 (Bates No. 1035-1169); 10) Longmont PD Case

Report 10-11356 (Bates No. 1449-1460); 11) Deposition transcripts of Uliston James "Bill"

Black, Jr. and Larry R. Hank; 12) El Paso County Sheriff's Office, Interim Directive #10.11,

Revision of Personal Outgoing Inmate Mail Procedures, December 16, 2010.

9.      In addition to the above case-specific materials, I reviewed the outgoing mail

policies of the following Colorado county jails: Adams, Alamosa, Arapahoe, Archuleta, Baca,

Bent, Broomfield, Chaffee, Cheyenne, Clear Creek, Conejos, Costilla, Crowley, Custer, Delta,

Denver, Douglas, Eagle, Elbert, El Paso, Fremont, Garfield, Gilpin, Grand, Gunnison, Huerfano,

Jefferson, Kit Carson, La Plata, Lake, Larimer, Las Animas, Lincoln, Logan, Mesa, Moffat,

Montezuma, Montrose, Morgan, Park, Pitkin, Powers, Pueblo, Rio Blanco, Routt, Saguache, San

Miguel, Summit, Teller, Washington, Weld, and Yuma.

10.     In addition, I have also reviewed the outgoing mail policies of the Colorado

Department of Corrections; the Federal Bureau of Prisons; and, the Federal ADX "supermax"

prison at Florence, Colorado. I also reviewed such correctional standards as: the *Minimum Jail

Standards*, Texas Jail Commission; *Performance Based Standards for Adult Local Detention

Facilities*, American Correctional Association (ACA), (4th edition 2004); *Manual of Correctional

Standards*, ACA, 3rd Edition; and, *Human Rights and Prisons*, Office of the United Nations High

Commissioner for Human Rights.

11.     In reviewing the above materials, I applied a number of sound correctional practice

principles in formulating my opinions.   First, the ability for inmates to maintain family and

community relationships/ties, by mail and otherwise, is an essential component of a sound

ACLU000394

4

correctional operation.   It fosters safe and secure management of the inmate while confined, and

facilitates his/her reintegration to the community upon release.   As stated in the ACA *Manual of*

*Correctional Standards* (page 545):   "To confined persons, letters from home and from friends

are often as important as visits.   Permission to write friends or relatives affords inmates

opportunity to express affection for loved ones and in many instances to release feelings of distress

and loneliness.   Letters are of such **tremendous** [emphasis added] importance to the inmate that

institutions are **glad to encourage** [emphasis added] correspondence as an integral part of the

treatment program."

      12.     Second, policies or practices that unnecessarily inhibit, impede, or chill, robust

inmate correspondence are antithetical to the most basic principles that govern management of

confined persons. This is reflected in the ACA *Standards for Local Adult Detention Facilities*,

Standard 4-ALDF-5B-05 as follows: "When the inmate bears the mailing cost, there is no limit on

the volume of letters he/she can send or receive or on the length, language, content, or source of

mail or publications, except when there is reasonable belief that limitation is necessary to protect

public safety or maintain facility order and security."

      13.     Third, security issues related to outgoing correspondence are routinely and safely

managed by confinement operations in the U. S.   Correctional managers institute a wide variety

of measures that minimize potential threats posed by outgoing correspondence without such a

limitation as has been imposed in this matter.   Such a blanket policy applicable to all inmates,

regardless of the security threat they represent, totally disregards the manner in which security and

safety measures are typically applied in a confinement setting, i.e., proportionality between the

threat and the security measure. (see Federal Bureau of Prisons Program Statement, 5265.11

Section 11.c. (1), "Outgoing mail from a sentenced inmate in a minimum or low security level

ACLU000395

institution may be sealed by the inmate and, except as provided for in paragraphs (c)(1)(a) through (d) of this section, is sent out unopened and uninspected."). The potential security threat represented by outgoing correspondence can be and is most typically addressed by such measures that provide for inspection of mail on a random basis, or when there is a suspicion connected to certain mail or certain prisoners. Managers are certainly free to institute measures specifically directed at, or applied to, high risk inmates. Inspecting every piece of outgoing mail is not necessary or essential to maintaining jail order or security.

## VII. OPINION

14.     The BCJ policy that limits outgoing, non-legal mail to 5.5" x 8.5" postcards is not necessary or essential to further any legitimate interests in security or order. Such a policy unnecessarily limits inmate opportunities to engage in lawful and routinely accepted correspondence practices. Moreover, such a policy is not necessary or essential to address the correspondence issues evident in the Rael/Whitehead incident, in which prisoners apparently managed to send letters through intermediaries who then forwarded them on to girls in the community who were unaware that the letters they received were coming from prisoners.

## VIII. BASIS FOR OPINION

15.     I have reviewed the mail policy for the Colorado Department of Corrections (CDOC), which confines approximately 22,700 inmates. CDOC inmates are not restricted to postcards; they are allowed to write letters "to family, friends, courts, legal counsel, and other public/private entities, as appropriate." (see CDOC, Administrative Regulation Number 300-38). I have reviewed the mail policy for the Federal Bureau of Prisons (BOP), a system that confines approximately 208,000 inmates. BOP inmates are not restricted to postcards; they are, in fact, "encourage[d] to correspond." (see BOP Program Statement, 5265.11 Section 1). I have

ACLU000396

6

reviewed the mail policy for the United States Penitentiary, Administrative Maximum Facility
(ADX), the "supermax" facility in Florence, Colorado, which confines inmates with the highest
security classifications in the U. S.   Having conducted a site inspection at the ADX, I can attest
that it is the most secure prison I have visited in my career.   ADX inmates are not restricted to
postcards.

    16.     Having reviewed the outgoing mail policies of the Colorado jails, as listed above,
not a single jail policy restricted outgoing mail in such a manner as does the BCJ.   More
importantly, having reviewed the deposition transcripts of the chief jail administrator of BCJ, and
the official who drafted and developed the current policy, it is evident that less restrictive
alternatives were not considered, that the current policy not only unduly limits the amount of
correspondence but also the content, and finally that it is considerably more costly and
cumbersome to implement and may very well undermine the orderly operation and management of
the facility.

    17.     Regarding consideration of less restrictive alternatives, both officials testified that
no such consideration was given.

        Deposition Testimony of Commander Black at pages 157-58:

        Q. So other than eliminating or reducing the quantity of inmate
        outgoing mail, has the Boulder County Jail engaged in any analysis
        of the feasibility of less restrictive alternatives to the postcard
        policy?
        A. No.
                                *   *   *
        Q. I mean, the Boulder County Jail has never engaged in an actual
        analysis of the feasibility of any alternatives to the postcard policy,
        has it?
        A. No.
        Q. So the only outgoing mail policy that the Boulder County Jail
        ever seriously considered as a response to the Rael/Whitehead
        incident was the postcard policy, correct?

7

ACLU000397

A. Yes.

Deposition Testimony of Division Chief Hank at page 48:

Q. What alternatives to the postcard policy has the Boulder County
Sheriff's Office ever considered to address the problems raised by
the Rael/Whitehead incident?
A. The only other things I considered is whether or not I would stop
supplying paid–pre–paid mail for inmates who aren't indigent or
not, or limiting how many to do those things.   I decided I didn't
want to do that.
Q. Why not consider these other less-restrictive alternatives, like
watermarking paper?
A. Because I got to a policy that basically I felt addressed the issue
and didn't need to look anymore.   I'm satisfied with the policy I
have.

18.     Regarding the "chilling" effect of the policy, the two officials testified as follows:

Deposition Testimony of Commander Black at pages 123-24:

Q. And this is the question: Inmates may be chilled from writing
about very personal things in postcards that they do not want other
inmates to know–I need to say it again now.
        Because of the postcard policy, inmates may be chilled from
writing about very personal things on postcards that they do not
want other inmates to know, correct?
A. Yes.

Deposition Testimony of Division Chief Hank at page 98:

Q. And so I'm just–I'm fine with your answer.   It will be there.
But I'm asking you, it's true that there is some–there are some
correspondence that is simply too private to be put on a postcard,
correct?
A. Agreed.

19.     Regarding the costs and processing of outgoing mail pursuant to the current policy,

two officials testified as follows:

Deposition Testimony of Commander Black at page 148:

Q. But you agree that processing official mail at the Boulder County
Jail is both tedious and time-consuming?

8

ACLU000398

A. Yes.

<u>Deposition Testimony of Division Chief Hank at page 152</u>:

Q. Are you aware that there has been a lack of uniformity in the application of the official mail policy at the Boulder County Jail?
A. Yes, ma'am.

20.     The development and adoption of the postcard limitation was prompted by the Rael/Whitehead third-party mailings. (see Hank deposition, at pages 18 and 84; Black deposition, at page 154).   Both officials acknowledged that even with the adoption of the postcard limitation, the inmates could still attempt "grooming" mailings. (see Hank deposition, at page 54; Black deposition, at page 172).   Both officials also acknowledged several less restrictive alternatives that indeed would have minimized or eliminated entirely the inmates' opportunities to engage in "grooming" mailings. (see Hank deposition, at pages 99-100; Black deposition, at pages 74-75, 85).

21.     In conclusion, the fact that all of the confinement operations with which I am familiar throughout the U.S., are able to maintain requisite levels of security at their facilities without limiting outgoing correspondence to postcards, provides ample evidence that such a restriction is neither necessary nor essential to further any legitimate interests in security or order, and may in practice, actually undermine the orderly operation and management of the facility. Because BCJ officials failed to properly assess the full array of options that could have properly been tailored to address a legitimate security issue, i.e., third-party mailings, the current policy is not only an exaggerated and too limiting response to inmate correspondence, it has resulted in a

ACLU000399

practice that is unpredictable, constantly changing, and not fully understood by either staff or inmates.

I declare under penalty of perjury that the foregoing is true and correct.   Executed this 16th day of February, 2011.

Steve J. Martin

ACLU000400

10

# EXHIBIT 1

ACLU000401

# CURRICULUM VITAE

**NAME:**              Steve J. Martin

**ADDRESS:**           8513 Adirondack Trail
                       Austin, Texas 78759

**TELEPHONE:**         Office:  (512)346-7607
                       E-mail:  sjmart@sbcglobal.net

**DATE OF BIRTH:**     August 27, 1948

**EDUCATION:**

1973                   Bachelor of Science
                       Criminology and Corrections
                       Sam Houston State University
                       Huntsville, Texas

1974                   Master of Arts
                       Correctional Administration
                       Sam Houston State University
                       Huntsville, Texas

1981                   Juris Doctor
                       University of Tulsa
                       School of Law
                       Tulsa, Oklahoma
                       (Admitted to Texas State Bar-Card #13106550)

**EMPLOYMENT:**

1987-Present           Corrections Consultant and Attorney

1986-1987              Gray & Becker, Attorneys at Law
                       General practice law firm engaged in litigation, administrative
                       law, civil rights and legislative work.

1985-1986              Texas Office of the Attorney General - Special Assistant
                       Attorney General.  Worked as a consultant to the Chief of the
                       Enforcement Division on litigation involving the Texas
                       Department of Corrections.

(Vita current as of January 2011)

ACLU000402

**STEVE J. MARTIN VITA PAGE 2**
**Employment (continued)**

| | |
|---|---|
| 1981-1985 | Texas Department of Corrections - Executive Assistant to the Director (1984-85); General Counsel (1983-85); Legal Counsel (1981-83) Huntsville, Texas |

As Legal Counsel, I served as the in-house attorney on class action litigation. In 1982, I was given responsibility for providing primary case administration of RUIZ v. ESTELLE (a class action conditions lawsuit in which virtually all operational aspects of the prison system were subject to court orders). From 1983-85, I served as the chief legal officer of the department. I also served as the liaison to the Office of the Special Master in RUIZ as well as liaison to the Office of the Attorney General and the Texas Legislature. From 1984 I also served as the Director's Executive Assistant, an operations position and the third ranking official in the department.

| | |
|---|---|
| 1980-1981 | Tulsa County District Attorney's Office Assistant District Attorney/ Legal Intern Tulsa, Oklahoma |

As an Assistant District Attorney/Legal Intern, I provided representation to county jail officials on civil rights litigation filed by county jail prisoners. I also drafted a set of jail standards adopted by the district judges for operation of the jail.

| | |
|---|---|
| 1975-1980 | United States Probation and Parole Office U.S. Probation and Parole Officer McAllen, Texas (1975-77) Tulsa, Oklahoma (1977-80) |

As a probation officer I supervised an average caseload of 50 to 75 probationers and parolees in addition to conducting pre-sentence and pre-trial diversion reports.

| | |
|---|---|
| 1974 | Federal Bureau of Prisons Federal Corrections Institution Casework Intern Fort Worth, Texas |

ACLU000403

**STEVE J. MARTIN VITA PAGE 3**
**Employment (continued)**

|  | After my first year of graduate school, I worked as a summer Casework Intern for the Director of Mental Health Programs at the facility. |
|---|---|
| 1972-1973 | Texas Department of Corrections
Correctional Officer
Huntsville, Texas |
|  | I was assigned to the Ellis Unit, a maximum security prison, and worked routine security posts such as cellblocks, control center, hall officer, and death row.  I also worked at the Goree Unit for female offenders. |

**REPRESENTATIVE PROFESSIONAL ACTIVITIES:**

| 2001-Present | Appointed as a Court Expert, CARRUTHERS v. JENNE, to examine the conditions of confinement in Broward County Department of Detention, Ft. Lauderdale, Florida. |
|---|---|
| 2003-Present | Retained as an expert witness in DISABILITY ADVOCATES, INC. v. NEW YORK STATE OFFICE OF MENTAL HEALTH, et al., involving class action civil rights claims regarding the treatment of mentally ill inmates confined to disciplinary segregation, New York State Department of Corrections. |
| 2004-Present | Appointed as Court Monitor, GATES v. BARBOUR, to monitor capacity orders for the Mississippi Department of Corrections. |
| 2005-Present | Retained as an expert witness, FAIRLEY v. ANDREWS, regarding allegations of excessive force in the Cook County Jail, Chicago, Illinois. |
| 2005-Present | Retained as an expert witness, T.R., P.R., and K.W.  v. SOUTH CAROLINA DEPARTMENT OF CORRECTIONS, class action litigation regarding the treatment of mentally ill inmates in the South Carolina Department of Corrections. |

ACLU000404

**STEVE J. MARTIN VITA PAGE 4**
**Representative Professional Activities (continued)**

| | |
|---|---|
| 2006-Present | Member of Editorial Board, *Correctional Law Reporter.* |
| 2006-Present | Retained as an expert, DITTIMUS-BEY, et al. v. TAYLOR, et al., regarding conditions of confinement at the Camden County Jail, Camden, New Jersey. |
| 2007-Present | Retained as an expert by Independent Fact Finder and Court Montior, S.H. v. STICKRATH, to examine/monitor staff use of force, restraints, seclusion, classification, and youth grievances at the Ohio Department of Youth Services. |
| 2007-Present | Retained as an expert witness, VANDEHEY v. VALLARO, regarding use of force at the Garfield County Jail, Colorado. |
| 2008-Present | Retained as expert witness, SILVERSTEIN v. BOP, regarding confinement at the United States Penitentiary Administrative Maximum ("ADX"), Florence, Colorado. |
| 2008-Present | Retained as an expert witness, CARTY v DEJONGH, regarding conditions of confinement at facilities in St. Thomas, Virgin Islands. |
| 2009-Present | Retained as an expert witness, HICKS v HETZEL, regarding conditions of confinement at the Donaldson Correctional Facility, Bessemer, Alabama. |
| 2010-Present | Retained as an expert witness, SHREVE v FRANKLIN COUNTY JAIL regarding use of force. |
| 2010-Present | Retained as an expert witness, SOLIS v BACA, regarding strip searches at the Los Angeles County Jail. |
| 2010-Present | Appointed as Court Monitor, REYNOLDS v SCHRIRO, to monitor use of restraints by New York City Department of Corrections at the Bellevue and Elmhurst hospitals. |
| 2010-Present | Retained by the Department of Homeland Security, Office for Civil Rights and Civil Liberties as penology expert. |

ACLU000405

**STEVE J. MARTIN VITA PAGE 5**
**Representative Professional Activities (continued)**

| | |
|---|---|
| 2010 | Participated as *amici curiae,* SCHWARZENEGGER v PLATA, regarding prison overcrowding in the California Department of Corrections. |
| 1993-2008 | United States Department of Justice, Civil Rights Division, Special Litigation Section, Corrections Expert. |
| 2005-2008 | Retained as an expert, WILLIAMS v. TASER INTERNATIONAL, INC., regarding use of force at the Gwinnett County Detention Center, Georgia. |
| 2006-2008 | Retained as an expert witness, IKO v. GALLEY, regarding use of force at the Western Correctional Institution, Maryland Department of Public Safety and Correctional Service. |
| 2007 | Participated as *amici curiae*, IQBAL v. ASHCROFT, U. S. Court of Appeals, 2nd Cir., regarding treatment of detainees at the Metropolitan Detention Center, New York City. |
| 2007-2008 | Retained by the U.S. Attorney's Office, New York City, to examine staff use of force at the Westchester County Jail, White Plains, New York. |
| 2008-2009 | Retained as an expert witness, JACKSON v. GERL, regarding use of force at the Wisconsin Secure Program Facility, Boscobel. |
| 2007-2009 | Retained as an expert witness, YOUNG v. COOK COUNTY, regarding the strip search policies of the Cook County Jail. |
| 2007-2008 | Retained as an expert witness, RUTLEDGE v. COOK COUNTY, regarding staff use of force at the Cook County Jail. |
| 2006-2008 | Retained as an expert witness, WILKERSON, et al. v. STALDER, regarding the placement of inmates in long-term segregation at the Louisiana State Penitentiary, Angola. |

ACLU000406

**STEVE J. MARTIN VITA PAGE 6**
**Representative Professional Activities (continued)**

| | |
|---|---|
| 2006-2007 | Retained as a consulting expert by the State Attorney, 13th Judicial Circuit, Tampa, Florida, In Re: In-Custody Death of Martin Lee Anderson while confined at the Bay County Boot Camp, Panama City, Florida. |
| 2004-2006 | Retained as an expert witness, INGLES v. TORO, class action use of force litigation involving the New York City Department of Corrections. |
| 2005-2006 | Retained as an expert witness, GILLIS v. LITSCHER, et al., regarding placement of an inmate in the Behavior Management Program, Wisconsin Secure Program Facility. |
| 2005 | Member, Travis County, Citizen Bond Advisory Committee; Chairman, Sub-Committee on Jails, Travis County, Texas. |
| 2005 | Participated as *amici curiae*, WILKINSON v. AUSTIN, No. 04-495, Supreme Court of the United States; placement process for inmates in supermax prisons. |
| 2002-2005 | Appointed as Court Monitor, UNITED STATES v. NASSAU COUNTY, to monitor Settlement Agreement on use of force, Nassau County Corrections Center, Long Island, New York. |
| 2002-2005 | Retained as a consultant by the Georgia Attorney General's Office to review use of force practices at the Phillips State Prison, Buford, Georgia. |
| 2003-2004 | Retained as an expert witness, HARGETT v. ADAMS, class action litigation regarding conditions of confinement at the Joliet Treatment & Detention Facility, Illinois. |
| 2003-2004 | Retained as an expert witness, NEW TIMES v. ADAMS, class action litigation regarding censorship practices of the Colorado Department of Corrections. |
| 2002-2004 | Retained by the United States Attorney's Office, San Francisco, as an expert in UNITED STATES v. LEWIS; criminal civil rights prosecution for civil rights violations at |

ACLU000407

the Pelican Bay State Prison.

**STEVE J. MARTIN VITA PAGE 7**
**Representative Professional Activities (continued)**

| | |
|---|---|
| 2003-2004 | Retained as a consultant by the Georgia Attorney General's Office in BURNS v. WETHERINGTON, regarding civil rights claim for failure to protect an inmate at the Lee Arrendale State Prison, Alto, Georgia. |
| 2004 | Retained as a consultant to the Ohio Department of Youth Services on staff use of force. |
| 2004 | Retained as a consultant by the Los Angeles County, Special Counsel, to assist in a report to the Los Angeles County Board of Supervisors on inmate violence in the Los Angeles County jails. |
| 2000-2002 | Appointed as Court Monitor, DOES v. STEWART, to monitor a system-wide class action remedial order on protective segregation for the Arizona Department of Corrections. |
| 1998-2002 | Appointed as Court Monitor, SHEPPARD v. PHOENIX, to monitor a court order on use of force in the New York City Department of Corrections, Rikers Island. |
| 2001 | Retained by the United States Department of Justice and the United States Attorney's Office, Brooklyn, New York to assist in the development of remedial plan for Nassau County Sheriff's Department, Division of Correction, Use of Force. |
| 2001 | Retained by the United States Attorney's Office, San Francisco, as an expert in UNITED STATES v. POWERS and GARCIA, a criminal civil rights prosecution for civil rights violations at the Pelican Bay State Prison. |
| 2001 | Retained by the Los Angeles County Board of Supervisors to evaluate the in-custody restraint death of a detainee. |
| 2001 | Served as a Member of the research team of the Berkman Center, Harvard Law School, to evaluate rehabilitation programs in two Jamaican maximum security prisons. |

ACLU000408

**STEVE J. MARTIN VITA PAGE 8**
**Representative Professional Activities (continued)**

| | |
|---|---|
| 2000 | Participated as *amici curiae*, ATWATER v. CITY OF LAGO VISTA, No. 99-1408, Supreme Court of the United States, regarding custodial arrests for a non-jailable misdemeanor. |
| 1989-2000 | Retained as an expert witness and consultant, FELICIANO v. COLON, conditions litigation involving the Puerto Rico prison system. |
| 1999-2001 | Retained as an expert, MULDROW v. KEOHANE, litigation regarding the use of restraints, USP, Atlanta, Georgia. |
| 1999-2000 | Retained as an expert, SABATINO v. AMENN, class action litigation on the use of restraints, Erie County Prison, Pennsylvania. |
| 1999-2000 | Retained as a consultant to review Immigration and Naturalization Service Detention Standards, United States Department of Justice. |
| 1996-1999 | Retained as an expert, LEE v. COUGHLIN, litigation involving punitive segregation at Sing Sing/Southport prisons, New York. |
| 1998-1999 | Retained as an expert, SPATES v. IOWA CORRECTIONAL INSTITUTION FOR WOMEN, conditions litigation. |
| 1992-1995 | Retained as an expert witness, MADRID v. GOMEZ, conditions litigation involving Pelican Bay State Prison, California. |
| 1996-1998 | Retained as an expert witness, COLLINS v. ALGARIN, litigation involving excessive force at Montgomery County Jail, Pennsylvania. |
| 1994-1998 | Retained as an expert witness, ALLEN v. CHISHOLM, excessive use of force litigation involving Montana State Prison. |

ACLU000409

**STEVE J. MARTIN VITA PAGE 9**
**Representative Professional Activities (continued)**

1995-1998

Retained as an expert witness, BOLTON v. COOMBE, litigation involving double celling practices at Woodbourne Correctional Facility, New York.

1996-1998

Retained as an expert witness, SOLOMON v. DELLANA, litigation involving excessive use of force at the Allegheny County Jail, Pittsburgh.

1997-1998

Retained as an expert witness, BLACKMON v. McCOTTER, litigation involving stabbing death of inmate at the Central Utah Correctional Facility.

1997-1998

Retained as an expert witness, CLARK v. CALIFORNIA, litigation involving treatment of developmentally disabled prisoners in the California Department of Corrections.

1997-1998

Retained as an expert witness, TATE v. GOMEZ, litigation involving lethal force at the Corcoran State Prison, California.

1994-1995

Retained as an expert witness by the New York Attorney General's Office, BIN-WAHAD v COUGHLIN, litigation involving claim of retaliatory transfer in New York Department of Corrections.

1993-1995

Retained as a consultant to the Texas Comptroller of Public Accounts, Performance Review of the Texas Department of Criminal Justice.

1991-1993

Gubernatorial appointee to the Texas Punishment Standards Commission; Vice-Chair, Policy Development Committee.

1989-1993

Retained as a consultant and expert witness on prison and jail litigation by the Texas Attorney General's Office.

1992-1993

Retained as a consultant, BENJAMIN v. ABATE. Principal author of Reports of Plaintiffs' Expert Consultants on Conditions in the New York City Jails, Legal Aid Society,

ACLU000410

New York.

**STEVE J. MARTIN VITA PAGE 10**
**Representative Professional Activities (continued)**

1991-1992                          Staff Director, Study Committee on Judicial Education, Texas Supreme Court.  Principal investigator for the <u>Report on Judicial and Court Personnel Education Programs.</u>

1990-1992                          Retained as an expert witness and consultant, JENSEN v. CLARKE, crowding litigation involving Nebraska State Prison, Lincoln, Nebraska.

1989-1993                          Retained as a consultant on litigation involving numerous county jails including Detroit, Seattle, Houston, Austin and San Antonio.

1989-1991                          Assisted Texas Legislature on the development of criminal justice legislation, 71st and 72nd Legislatures.

1988-1989                          Gubernatorial Appointee to Texas Council on Offenders with Mental Impairments; Chairman, Legislative Subcommittee.

1986-1990                          Retained by Corrections Corporation of America, Nashville, Tennessee, to assist in the development and operation of private prison facilities in Texas.

1988-1992                          Employed as expert witness by Prison Law Office, San Quentin on litigation involving Vacaville, San Quentin and Tracy prisons.

1987-1993                          Employed as expert witness by Prisoners Legal Services of New York on litigation involving Attica and Elmira prisons.

1987-1989                          Employed as expert witness by NAACP LDF, New York on death row conditions litigation in Missouri and Arkansas.

**TEACHING/LECTURES/SYMPOSIUMS:**

2010                               Participant, Department of Homeland Security, "Roundtable on Mental Health and Immigration Enforcement."

ACLU000411

**STEVE J. MARTIN VITA PAGE 11**
**Teaching/Lectures/Symposiums (continued)**

| | |
|---|---|
| 2009 | Speaker, Texas Criminal Defense Lawyers Association, Seminar, Post Conviction Law and Criminal Administrative Remedies, *Status of Prisoners' Rights in Today's Criminal Justice Arena*, January 9, 2009. |
| 2005 | Testified before Commission on Safety & Abuse in America's Prisons on Staff Use of Force in United States Confinement Settings; April 20, 2005, Tampa, Florida. |
| 2003 | Symposium on Prison Reform, Pace Law School, Judicial Institute and the Open Society; moderator and presenter for Effective Post-PLRA Settlement Models, October 2003. |
| 2001 | Presenter, Southern Methodist University School of Law, Colloquium on the Judicial Work of Judge William Wayne Justice, May 2001. |
| 2000 | Guest Lecturer, University of Minnesota Law School, Institute of Criminal Justice; "Responding to the Crowded Jail, Legal Issues." |
| 1999 | Visiting Scholar, Institute of Criminology and School of Law, Queen's University, Belfast, Ireland; Seminar: "Punishment as Big Business: The Iron Triangle," October 1999. |
| 1999/2000 | Guest Lecturer, New York University School of Law. |
| 1995 | Guest Lecturer, National Association of Attorneys General Annual Conference; "The Role of Experts in Prison Litigation." |
| 1995 | Testified before the United States Senate Judiciary Committee as a panel member on the Prison Litigation Reform Act. |
| 1990 | Southwest Texas State University, San Marcos, Texas. Adjunct faculty - taught corrections course. |
| 1989 | St. Edwards University, Austin, Texas. Adjunct faculty - taught corrections course. |

ACLU000412

**STEVE J. MARTIN VITA PAGE 12**
**Teaching/Lectures/Symposiums (continued)**

| | |
|---|---|
| 1988 | Technical Assistance Consultant, National Institute of Corrections Boulder, Colorado. |
| 1986 | The University of Texas School of Law, Austin, Texas. Visiting faculty - taught seminar on institutional reform litigation. |
| 1979-1981 | Langston University, Tulsa, Oklahoma.  Adjunct faculty - taught probation and parole, corrections, and criminology courses. |
| 1976-1977 | Pan American University, Edinburg, Texas. Adjunct faculty – taught corrections courses. |
| 1973-1974 | Sam Houston State University, Huntsville, Texas.  Graduate Fellow - taught course in social problems. |

**PUBLICATIONS/PAPERS:**

Kercher, Glen A. And Steve J. Martin, "Severity of Correctional Officer Behavior in the Prison Environment," presented before the Texas Academy of Science, Huntsville, Texas, 1975.

Martin, Steve J., and Sheldon Ekland-Olson, <u>Texas Prisons: The Walls Came Tumbling Down</u>, Austin: Texas Monthly Press, 1987.

Ekland-Olson, Sheldon and Steve J. Martin, "Organizational Compliance with Court-Ordered Reform," 22 *Law and Society Review* 359, 1988.

Martin, Steve J., "Prisoners' Rights", *Texas Tech Law Review*, Volume 20, Symposium 1989, Number 2.

Martin, Steve J., "Texas Prisons: A Brooding Crisis Behind Bars", *Texas Lawyer*, March 13, 1989.

Martin, Steve J., and Sheldon Ekland-Olson, "Ruiz, A Struggle Over Legitimacy", <u>Courts, Corrections and the Constitution: The Impact of Judicial Intervention on Prisons and Jails</u>, edited by John J. DiIulio, Jr., Oxford University Press, 1990.

Martin, Steve J., "The Celling of Texas", *Texas Observer*, January 11, 1991.

Martin, Steve J., "An End to Ruiz: Shifting the Debate from Rhetoric to Reason", Texas Public Policy Foundation, April 1995.

ACLU000413

**STEVE J. MARTIN VITA PAGE 13**
**Publications (continued)**

Grant, Darlene  and Steve Martin, "Should Prison Reform Litigation Be Curtailed?" National Council on Crime and Delinquency *Focus*, May 1996.

Martin, Steve J., "Prison Reform Litigation: Shifting the Debate From Rhetoric to Reason," Alan Fortunoff Criminal Justice Colloquium, Center for Research in Crime and Justice of New York University School of Law, February 26, 1996.

Martin, Steve J., Perspectives on Justice, "Inmates Haven't Changed, Prisons Have," *Los Angeles Times*, July 1998.

Martin, Steve J., "Sanctioned Violence in American Prisons," <u>Building Violence: How America's Rush to Incarcerate Creates More Violence</u>, edited by John May, Sage Publications, Inc., January 2000.

Martin, Steve J., "Corrections in the New Millennium: The Mean Season," *Voice for the Defense*, Texas Criminal Defense Lawyers Association, Vol.29 Number 2, March 2000.

Martin, Steve J., "Introduction," *Frontiers of Justice, Volume 3: The Crime Zone*, Biddle Publishing Co., Brunswick, Maine, March 2000.

Martin, Steve J., Book Review: Going Up the River: Travels in a Prison Nation, Punishment & Society, *International Journal of Penology*," Vol. 4, Number 1, January 2002.

Martin, Steve J. Book Review: Punishment & Democracy: Three Strikes and You're Out in California, *British Journal of Criminology*, Vol.43, Number 1 Winter 2003.

Martin, Steve J.,  Book Review: Maconochie's Gentlemen: The Story of Norfolk Island and the Roots of Prison Reform, *British Journal of Criminology*, Vol.43, Number 4 Autumn 2003.

Hill, Debbie, Larry Hammond, Bruce Skolnik, Steve J. Martin and Donna Clement; "Effective Post-PLRA Settlement Models: A Case Study of Arizona's Protective Segregation Lawsuit," 24  *Pace Law Review* 743 (Spring 2004).

Martin, Steve J., Staff  Use of Force in U.S. Confinement Settings; Commission on Safety and Abuse in America's Prisons, 601 Thirteenth St., N.W., Washington, D. C., *Washington Journal of Law & Policy*, Volume 22 (2006 ).

Martin, Steve J., Staff Use of Force in U. S. Confinement Settings: Lawful Control Versus Corporal Punishment; *Social Justice Quarterly,* Vol. 33, No.4 (2007).

Martin, Steve J., Effective Expert Witnessing in Corrections Litigation: Rules, Relevance & Reliability, *Correctional Law Reporter;* Volume XX No.1, June/July 2008.

ACLU000414

STEVE J. MARTIN--TESTIMONY/DEPOSITION/AFFIDAVIT
January 2006 thru January 2011

1. DISABILITY ADVOCATES INC., V NEW YORK STATE OFFICE OF MENTAL HEALTH, et al., 02-Civ.4002 (GEL); retained by plaintiffs' attorneys, Davis Polk & Wardwell, 450 Lexington Ave., New York, NY 10017; testified through deposition regarding placement of mentally ill inmates in disciplinary segregation in the New York State Department of Corrections.

2. USA v Terrell County, Georgia, 1:04-CV-76-3 (WLS); retained by the U.S. Department of Justice; testified through declaration regarding conditions of confinement at the Terrell County Jail.

3.McCRACKEN v MELANCON, USDC WD/LOUISANA, CV 6:04CV1707; retained by David Benoit, PO Box 877, Breaux Bridge, Lousiana 70517; testified through deposition regarding inmate protection from harm at the Arcadia Parish Jail, Crowely, Lousiana.

4. GILLIS V LITSCHER, et al., USDC ED/WIS, 02-CV-463; retained by Pamela McGillivray, Garvey McNeil & McGillivray, 634 W. Main St., Madison, WI 53703; testified through deposition regarding conditions of confinement at the Wisconsin Secure Program Facility.

5. SIFUENTES v CITY OF CORSICANA, et al., USDC ND/TX, 3-04DV-2307-K; retained by Spencer Markle, Morgan & Weisbrod, 6800 West Loop South, Suite 450, Bellaire, TX 77401; testified through deposition regarding failure to protect detainee at the Navarro County Jail.

6. LEWIS, et al., v PRISON HEALTH SERVICES, et al., USDC ND/GEORGIA; retained by Brian Spears, 1126 Ponce de Leon Ave, NE, Atlanta, Georgia; testified through deposition regarding in-custody death during application of force at Gwinnett County Jail.

7. HOLLOWAY v MITCHELL-ODDEY, et al., New York District Court, ND/New York; retained by Stacy L. Graczyk, Prisners's Legal Services of New York, 121 Bridge St., Suite 202, Plattsburgh, New York 12902; testified through deposition regarding use of force at the Upstate Correctional Facility, Malone, New York.

8. THOMPSON v TILTON, U.S. District Court, Northern District of California; retained by Don Specter, Prison Law Office, General Delivery, San Quentin, CA 94964; testified through declaration regarding death row conditions at San Quentin.

9. IKO v GALLEY, et al., U. S. District Court, District of Maryland; retained by Gary Adler, O'Connor & Hannan, 1666 K Street, Washington, D.C. 20006; testified through deposition regarding use

ACLU000415

1

of force at the Western Correctional Institution, Cumberland, Maryland.

10. WISEMAN v ARMSTRONG, et al., SUPERIOR COURT, STATE OF CONNECTICUT; retained by Antonio Ponvert, Koskoff,Kosokoff & Beider, 350 Fairfield Ave., Bridgeport, Connecticut 06604; testified through deposition and trial regarding use of force at the Garner Correctional Facility, Newtown, Connecticut.

11. BAKER v STATE OF CALIFORNIA, et al., U.S. District Court, Eastern District of California, Sacramento Division; retained by Davey Turner, 215 No. San Joaquin St., Stockton, CA 95202; regarding use of force at the Chaderjian Youth Facility, Stockton, CA.

12. WILKERSON, et al. v STALDER, et al., U.S. District Court, Middle District of Louisiana; retained by George Kendall, Holland & Knight, 195 Broadway, NY, NY 10007; regarding the placement of plaintiffs in extended lockdown at the Louisiana State Penitentiary, Angola.

13. NEALOUS v OZMINT, U.S. DISTRICT COURT, SOUTH CAROLINA; retained by John Slosson, Nelson Mullins, 151 Meeting Street, Charleston, SC 29401; regarding the inmate disciplinary procedures of the South Carolina Department of Corrections.

14. STATE OF OHIO v HANCOCK, COURT OF COMMON PLEAS, WARREN COUNTY, OHIO; retained by Greg Myers, Ohio Public Defender's Office, 8 East Long Street, Columbus, Ohio 43215; testified during punishment phase of death penalty trial.

15. BERNAL v STATE OF ARIZONA, SUPERIOR COURT, MARICOPA COUNTY, ARIZONA; retained by Michael Anthony, Carson, Messinger Elliott, 3300 North Central Avenue, Phoenix, AZ 85012; testified by affidavit regarding prison homicide in the Arizona Department of Corrections.

16.STATE OF OHIO v HANNA, COURT OF COMMON PLEAS, WARREN COUNTY, OHIO; retained by Ohio Public Defender's Office, 8 East Long St., Columbus, Ohio 43215; testified evidentiary hearing in federal court.

17. TINEY-BEY, et al.,v PETERS, et al., USDC ND/ILL; retained by Everett J. Cygal, Schiff-Hardin, 6600 Sears Tower, Chicago, Ill 60606; testified by deposition and trial regarding conditions at the Illinois Treatment & Detention Facility for Sexually Violent Persons.

ACLU000416

2

18. STATE OF FLORIDA v DICKENS, et al., Circuit Court, 14th Judicial District of State of Florida, in and for Bay County; testified by deposition regarding the death of Martin Lee Anderson.

19. BENJAMIN v HORN, et al., USDC SD/NY; retained by John Boston, the Legal Aid Society, Prisoners' Rights Project, 199 Water St., New York, New York; testified by affidavit regarding conditions of confinement at the Central Punitive Segregation Unit, New York City Department of Corrections.

20. STRUTTON & MURRELL v MISSOURI DEPT OF HEALTH; USDC ED/Missouri; retained by Roger Heidenreich, Sonnenschein Nath & Rosenthal, One Metropolitan Square, Suite 3000, St. Louis, MO 63102; testified by deposition regarding the conditions of confinement at the Missouri Sexual Offender Treatment Center, Farmington, MO.

21. JOHNSON v SOUTHERN HEALTH PARNTERS, et al., USDC MD/GEORGIA; retained by Brian Spears, 1126 Ponce de Leon Ave., NE, Atlanta, Georgia; testified by deposition regarding use of force at the Houston County Detention Center, Warner Robins, Georgia.

22. M.P.et al., v TEXAS YOUTH COMMISSION, District Court of Travis County, 53rd Judicial District; retained by Richard Lavallo, Advocacy, Inc., 7800 Shoal Creek, Suite 171-E, Austin, TX 78757; testified at hearing regarding use of force.

23. YOUNG v COUNTY OF COOK, et al., USDC ND/ILLINOIS; retained by Mike Kanovitz, Loevy & Loevy, Chicago; testified by deposition regarding strip searches at the Cook County Jail.

24. RUTLEDGE & MEJIA v COUNTY OF COOK, et al., USDC ND/ILLINOIS; retained by Matthew O. Skoglund, Sonnenschein, Chicago; testified by deposition and trial regarding use of force at the Cook County Jail.

25. STATE OF NEVADA v TAMIR HAMILTON, Washoe County, Nevada, CR06-2500; retained by Washoe County Public Defender; testified during punishment phase of death penalty trial.

26. WELLS v STATE OF LOUISIANA, et al., 6th Judicial District Court, Parish of Madison, 96-127;retained by Tony Bruscato, PO Box 2374, Monroe, LA 71207; testified by deposition regarding death of inmate confined at the Madison Parish Detention Center, Tallulah, LA.

27. WILLIAMS v GWINNETT COUNTY, et al., USDC ND/Georgia, 1:06-CV-0051-RWS; retained by Joan Crumpler, Morgan & Morgan, 191 Peachtree St., Atlanata, GA 30303; testified by deposition regarding death of inmate confined at the Gwinnett County Detention Center.

ACLU000417

3

28. FAIRLEY & GACKOWSKI v ANDREWS, et al., USDC ND/ILLINOIS, 03-C 5207; retained by Mary Rowland, Gessler Huges Socol, 70 West Madison St., Chicago, Illinois 60602; testified by deposition re deprivation of 1st Amendment rights under Sectin 1983.

29. PAULIN v ZALUCKY, et al., USDC SD/NY, 01 Civ. 2686; retained by Amy Howlett, Sullivan & Cromwell, 125 Broad St., NY, NY 10004; testified by deposition re excessive use of force at the Fishkill Correctional Institution.

30. VERGES v STATE OF NEW YORK, COURT OF CLAIMS, 107755, Syracuse; retained by Joan Magoolaghan, Koob & Magoolaghan, 221 Devoe Ave., Yonkers, NY 10705; testified at trial re protection from harm at the Cape Vincent Correctional Facility.

31. LEORNARD v STATE OF LOUISIANA, et al., USDC WD/LA, Shreveport Div., No.07-cv-0813; retained by Katie Swchartzmann, P.O. Box 56157, New Orleans, LA 70156; testified by deposition re publication censorship at the David Wade Correctional Center, Louisiana Department of Public Safety and Corrections.

32. ESTATE OF ILETA ZANK v COUNTY OF EATON, et al., USDC MICHIGAN, Southern Division; retained by Neil Wilensky, 6500 Centurion Dr., Lansing, MI 48917; testified by deposition re jail suicide.

33. CARTY v GOVERNOR DEJONGH, USDC VIRGIN ISLANDS, St. Thomas; retained by Eric Balaban, National Prison Project, 915 15th St., NW, Washing, DC 20005; testified at trial re conditions of confinement at St. Thomas prisons.

34. HICKS v HETZEL, USDC MD/ALABAMA, retained by Sarah Geraghty, Southern Center for Human Rights, 83 Poplar St., Atlanta, Georgia, 30303; testified by deposition re conditions of confinement at the Donaldson Correctional Facility.

35. SIVERSTEIN v FEDERAL BUREAU OF PRISONS, USDC COLORADO, retained by Laura Rovner, Civil Rights Clinic, University of Denver, 2255 E. Evans Ave., Denver, CO. 80208; testified by deposition re confinement of prisoner in extreme isolation at Administrative Maximum Facility ("ADX"), Florence, CO.

36. KALM v KEARNEY, Superior Court of the State of Delaware In and for Kent County, retained by Stephen Hampton, Grady & Hampton, 6 North Bradford, Dover, Delaware 19904; testified by deposition re use of force at the Sussex Correctional Institution.

ACLU000418

4

37. TORRES v LUCIO, USDC/SD TEXAS, retained by Alberto L. Guerrero, Reed, McLain & Guerrero, 3900 North 10th Street, Suite 850, McAllen, Texas 78501; testified by deposition re in-custody death at the Cameron County Jail, Brownsville, Texas.

38. ROBINSON v HORN, USDC WD/PENN, retained by Mary Walsh, Community Justice Project, 429 Forbes Ave., Pittsburgh, PA; testified at trial re restraints policies the State Correctional Institution, Pittsburgh.

39. SOLIS v BACA, USDC CD/CALIFORNIA, retained by Barry Litt, Litt, Estuar, Harrison & Kitson, 1055 Wilshire Bldv., Los Angeles  re body cavity searches at the Los Angeles County Jails; testified by deposition.

40. DUNLAP v ZAVARAS, USDC COLORADO, retained by Gail K. Johnson, 1401 Walnut Street, Suite 201, Boulder, CO 80302, re outdoor recreation at the Colorado State Penitentiary for death row inmate; testified by deposition.

41. SHREVE v REED, USDC SD/OHIO, retained by Jane Perry, Ohio Legal Rights Services, 50 W. Broad St., Columbus, Ohio 43215, re use of force at Franklin County Jail, Columbus; testified by deposition.

ACLU000419